# Exhibit A

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| BRIAN BECK<br>1470 Glen Lyon Dr.<br>Westlake, Ohio 44145<br><br>Plaintiff,<br><br>vs.<br><br>GEMS EDUCATION SOLUTIONS-AMERICA, INC.<br>555 Madison Avenue, 18th Floor<br>New York, NY 10022<br><br>**Serve also:**<br>National Corporate Research LTD<br>904 Master Drive<br>Galloway, Ohio 43119<br><br>-and-<br><br>ELIZA HOLCOMB<br>15620 Riverside Dr W Apt 1L<br>New York, NY 10032<br><br>-and-<br><br>ANDREW LEE<br>555 Madison Avenue, 18th Floor<br>New York, NY 10022<br><br>Defendants. | CASE NO:<br><br>Judge: TIMOTHY MCCORMICK<br><br>CV 13 813418<br><br>COMPLAINT FOR DAMAGES<br><br>(Jury Demand Endorsed) |

Plaintiff Brian Beck by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES & VENUE

1. Plaintiff Brian Beck is a resident the City of Westlake, Cuyahoga County, State of Ohio.
2. Defendant GEMS Education Solutions-America, Inc. is a Delaware corporation lawfully licensed to conduct business in the State of Ohio.
3. At all times relevant herein, GEMS owned, marketed, and operated charter schools in Ohio.



4. At all times referenced herein, Defendant Eliza Holcomb was an employee of GEMS.
5. At all times referenced herein, Holcomb was acting in the course and scope of her employment as a Human Resources supervisor for GEMS.
6. At all times referenced herein, Defendant Andrew Lee was an employee of GEMS.
7. At all times referenced herein, Lee was acting in the course and scope of his employment as a Human Resources supervisor for GEMS.
8. At all times relevant herein, Beck was GEMS' agent for soliciting and securing contracts in Ohio.
9. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code § 2307.382 (A)(1)-(2) and (B)
10. Venue is proper under Ohio Civ. R. 3(B)(12).
11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTS**

12. Beck is a former employee of GEMS.
13. On or about October 15, 2011, Brian entered into a contract with GEMS for the position of development consultant ("First Contract").
14. Under the First Contract, Beck was responsible for pursuing and securing new contracts with new clients in Ohio.
15. As payment for Beck's services under the First Contract, GEMS agreed to pay Beck $14,000.00 per month, plus a commission based on the value of the contracts Beck secured.
16. During the course of the First Contract, Beck secured contracts for the opening of two charter schools in Ohio and one in Washington, D.C.

THE
SPITZ
LAW FIRM

17. Pursuant to the First Contract, Beck is entitled to a 6 percent commission on over $3,500,000 in contract revenue secured in Ohio.

18. Upon information and belief, under to the First Contract, Beck is entitled to a commission for the value of the contract revenue secured in establishing the Kent Amos School in Washington, D.C.

19. GEMS unlawfully failed to pay Beck the commissions owed to him.

20. During his employment, Beck complained on numerous occasions about GEMS' unlawful failure to pay him his commissions.

21. On or about May 12, 2012, Beck sent an email message to Eliza Holcomb regarding GEMS' unlawful failure to pay him his commissions.

22. Holcomb failed to address Beck's concerns.

23. On or about May 21, 2012, Beck sent Holcomb another email about GEMS' unlawful failure to pay him his commissions.

24. On or about June 1, 2012, GEMS and Beck entered into a contract for the position of Vice President of Site Operations, GEMS Education Americas ("Second Contract").

25. The First Contract and the Second Contract are separate, independently executed agreements.

26. During negotiations for the Second Contract, Holcomb assured Beck that the Second Contract did not relieve GEMS of the obligation to pay him his commission.

27. Holcomb further assured Beck that GEMS would pay him commissions owed under the First Contract between December 2012 and February 2013.

28. Subsequent to entering into the Second Contract, Beck continued to complain to GEMS about its unlawful failure to pay him commissions owed under the First Contract.

29. By February of 2013, GEMS had failed to pay Beck.



30. On or about March 22, 2013, in a telephone conversation with Holcomb and Lee, Beck again complained about not receiving his commissions.

31. Immediately following his March 22, 2013 complaint, Holcomb and Lee retaliated against Beck by unlawfully terminating him.

32. As a result of GEMS' acts, Beck has sustained and will continue to sustain great and irreparable injury.

**COUNT I: FAILURE TO PAY COMMISSIONS PURSUANT TO OHIO REVISED CODE § 1335.11**

33. Beck restates each and every prior paragraph of this complaint, as if it were fully restated herein.

34. At all times in which Beck was acting pursuant to the First Contract, he was considered a "Sales Representative" under R.C. § 1335.11(A)(3).

35. GEMS violated R.C. § 1335.11(B) when it failed to pay Beck his commission during his employment under the First Contract.

36. GEMS violated R.C. § 1335.11(C) when it failed to pay Beck his commission within 30 days of terminating the First Contract.

37. GEMS failure to pay Beck his commissions was willful, wanton, reckless, and in bad faith.

38. Pursuant to R.C.§ 1335.11(D), Beck is entitled to exemplary damages, attorney's fees and court costs.

39. As a direct and proximate cause of GEMS conduct, Beck suffered and will continue to suffer damages.

**COUNT II: BREACH OF CONTRACT**

40. Beck restates each and every prior paragraph of this complaint, as if it were fully restated herein.

41. Under the First Contract, GEMS was obligated to pay Beck a sliding scale commission based the value of the contracts secured by him.

42. GEMS breached their contractual obligations to Beck.

43. Beck sustained damages as a direct and proximate result of GEMS' breach of contract.

**COUNT III: UNJUST ENRICHMENT**

44. Beck restates each and every prior paragraph of this complaint, as if it were fully restated herein.

45. During his employment, Beck secured over $4,000,000 in contract revenue for GEMS.

46. GEMS acknowledged, accepted and benefited from the value provided by Beck.

47. Pursuant to the First Contract, Beck expected to receive a salary and a commission in exchange for securing these contracts.

48. GEMS failed to pay Beck any commissions.

49. It would be inequitable for GEMS to enjoy the benefit of the value provided by Beck without compensating him as agreed under the First Contract.

**COUNT IV: PROMISSORY ESTOPPEL**

50. Beck restates each and every prior paragraph of this complaint, as if it were fully restated herein.

51. GEMS made clear and unambiguous promises to Beck that, in addition to his salary, he would receive a sliding scale commission.

52. Beck justifiably relied to his detriment upon GEMS' promise that he would be paid commissions for the value of all contracts secured by him.

53. GEMS intended that Beck rely upon said promises in an effort to compel Beck to provide services to GEMS.

54. Beck sustained damages as a direct and proximate result of GEMS' broken promises and Beck's justifiable reliance thereon.

**COUNT V: FRAUD**

55. Beck restates each and every prior paragraph of this complaint, as if it were fully restated herein.

56. GEMS represented and promised to Beck that he would receive a sliding scale commission for the value of contracts secured by him.

57. GEMS representation to Beck was false, and GEMS knew or should have known it was false.

58. GEMS intentionally and knowingly deceived Beck, with actual malice, in that GEMS never intended to pay Beck any commissions for the contracts secured by him.

59. The representation made by GEMS was as to an existing material fact, upon which GEMS intended Beck to rely.

60. Beck justifiably relied on GEMS' representations.

61. GEMS failed to pay Beck any commissions.

62. Beck sustained damages as a direct and proximate result of Defendants' fraudulent conduct.

**COUNT VI: RETALIATORY TERMINATION IN VIOLATION OF OHIO REVISED CODE § 4113.52.**

63. Beck restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

64. GEMS violated R.C.§ 4113.52(B)(1) by terminating Beck from his employment in retaliation for his reporting of unlawful activities.

65. As a direct and proximate cause of GEMS conduct, Beck suffered and will continue to suffer damages.



## COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

66. Beck restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

67. Under R.C.§ 1335.11, a clear public policy exists against terminating an employee because the employee complained about the commissions due to him or her under his or her employment contract.

68. GEMS conduct in terminating Beck when he complained about not being paid his commissions jeopardizes Ohio's public policy.

69. GEMS retaliation against and termination of Beck were motivated by his complaining about GEMS' failure to comply with R.C. § 1335.11.

70. As a direct and proximate cause of GEMS' conduct, Beck suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Brian Beck demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Plaintiffs for emotional distress, personal injury, property damage and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(c) An award of exemplary damage for his claims as allowable under law;

(d) An award of reasonable attorneys fees and non-taxable costs for his claims as allowable under law;

(e) An award of the taxable costs of this action; and



(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Brian D. Spitz (0068816)
THE SPITZ LAW FIRM, LLC
4568 Mayfield Road, Suite 102
South Euclid, Ohio 44121
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Brian.Spitz@SpitzLawFirm.com

*Attorney For Plaintiff Brian Beck*



**JURY DEMAND**

Plaintiff Brian Beck demands a trial by jury by the maximum number of jurors permitted.

Brian D. Spitz (0068816)



Attachment A

# *Development Consultant*

Reports to: Senior Vice President of Development (or his or her designee)

***CORE COMPETENCIES:***

The Development Consultant should exemplify the core vision and values of Global Partnership Schools (GPS) by working with the GPS staff and the educational system to create learning environments that prepare all students to succeed in the global economy and society. The role is a highly collaborative one - requiring the ability to operate and function within a team environment and to develop and foster business relationships across a spectrum of stakeholders. The Development Consultant's role also requires a significant amount of initiative and follow up in order to manage what can be a highly complex process.

***JOB SUMMARY:***

Responsible for pursuing and securing contracts with new clients. Act as liaison between contract holder and Global Partnership Schools to ensure smooth execution of contract. Facilitate on-going relationship with the contract holder and act as project plan manager through duration of contract.

***GOAL:*** Secure (phone and face-to-face) appointments over the next 30 days for Global Development Executives to discuss a Lead Partnership role with prospective clients planning to conduct SIG and RttT funded Turnaround, Transformation and Restart reform initiatives in 2011-2012.

***ROLES AND RESPONSIBILITIES INCLUDE BUT NOT LIMITED TO:***

- Responsible for conducting a phone calling campaign using a Global provided list of district superintendents awarded Round 2 SIG money and/or Race to the Top and Round 1 SIG funding;
- Responsible for daily documenting all activity and progress to a centrally located online (spreadsheet) repository;
- Responsible for participating in a brief "team" conference call to review progress and addresses any obstacles every 3 to 4 business days over the next 45 day period;
- Responsible for follow up actions, as requested by the Chief Executive Officer, SVP of Development and Director of Development;

*Revised effective date: 8/15/11*

- Seek assistance, as needed, from other GPS staff with development related responsibilities;
- Maintain regular communications with the SVP of Development and Director of Development.

***Effective Date:*** August 15, 2011

***Revised effective date: 8/15/11***

**SCHEDULE A**

**DUTIES, TERM, AND COMPENSATION**

**DUTIES:** The Contractor will:

- Engage with charter school boards of directors, authorizers, charter school leaders, and other officials, necessary to develop new charter school management business for GEMS Americas;
- Become knowledgeable about the GEMS charter school financial model and services;
- Make charter school management service presentations, participate in negotiations, and fulfill all other responsibilities necessary to meet client requirements;
- Manage the charter school development process for each potential client, from start to finish (contract closing);
- Provide weekly progress reports for each potential account;
- Deliver one (1) charter school management deal for the 2011-12 school year .., i.e. Crenshaw Academy in LA or another site;
- Deliver a minimum of two (2) new charter school deals for 2012-13 school year;
- Provide "operational" support to schools, upon special request of the CEO.

Contractor will report directly to Marialna Palmeri and shall fulfill any other duties reasonably requested by the Company and agreed to by the Contractor.

**TERM:** This engagement shall commence upon execution of this Agreement and shall continue in full force and effect through June 30, 2012 or earlier upon completion of the Contractor's duties under this Agreement, unless earlier terminated by notice. The Contractor will work two days a week on the duties requested by the Company. The Agreement may only be extended thereafter by mutual agreement, unless terminated earlier by operation of and in accordance with this Agreement.

**COMPENSATION:**

As full payment for the services rendered pursuant to this Agreement, the Company shall pay the Contractor the sum of $14,000 per month. Contractor shall invoice the Company on a monthly basis, and payment shall be due within 30 days of receipt of Contractor's invoice.

**Incentive Bonus Compensation Examples:**

| | *Minimum* *Target %* | *Maximum* *Target %* | *Contract Revenue Range* | | | |
|---|---|---|---|---|---|---|
| | 2.5% | 4.0% | $400,000 | | $599,999 | |
| | | | @2.5% | @4.0% | @2.5% | @4.0% |
| *Incentive Range* | | | $10,000 | $ 16,000 | $15,000 | $24,000 |

| | *Minimum* *Target %* | *Maximum* *Target %* | *Contract Revenue Range* | | | |
|---|---|---|---|---|---|---|
| | 3.0% | 5.0% | $600,000 | | $799,999 | |
| | | | @3.0% | @5.0% | @3.0% | @5.0% |
| *Incentive Range* | | | $18,000 | $ 30,000 | $24,000 | $40,000 |

| | *Minimum* *Target %* | *Maximum* *Target %* | *Contract Revenue Range* | | | |
|---|---|---|---|---|---|---|
| | 3.5% | 5.5% | $800,000 | | $999,999 | |
| | | | @3.5% | @5.5% | @3.5% | @5.5% |
| *Incentive Range* | | | $28,000 | $ 44,000 | $35,000 | $55,000 |

| | *Minimum* *Target %* | *Maximum* *Target %* | *Contract Revenue Range* | | | |
|---|---|---|---|---|---|---|
| | 4.0% | 6.0% | $1,000,000 | | $2,000,000 | |
| | | | @4.0% | @6.0% | @4.0% | @6.0% |
| *Incentive Range* | | | $40,000 | $ 60,000 | $80,000 | $ 120,000 |

*Revised effective date: 8/15/11*



GLOBAL
PARTNERSHIP
SCHOOLS

# INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is entered into as of the 15th day of October 2011, between GEMS Americas, Inc. ("the Company") and Brian Beck ("the Contractor").

1. **Independent Contractor.** Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

2. **Duties, Term, and Compensation.** The Contractor's duties, term of engagement, fees and provisions for payment thereof are set forth in Schedule A, which may be amended in writing by mutual written agreement from time to time.

3. **Expenses and Equipment.** Contractor shall supply all necessary equipment and shall bear all out of pocket expenses in relation to the services provided. Expenses for the time spent by Contractor in traveling to and from Company facilities shall be reimbursable within 30 days of the receipt of appropriate forms and receipts.

4. **Written Reports.** The Company may request that project plans, progress reports and a final results report be provided by Contractor from time to time. A final results report shall be due at the conclusion of the project and shall be submitted to the Company in a confidential written report in such form as is reasonably requested by the Company.

5. **Inventions.** Any and all inventions, discoveries, developments and innovations conceived by the Contractor during this engagement relative to the duties under this Agreement shall be the exclusive property of the Company; and the Contractor hereby assigns all right, title, and interest in the same to the Company. Any and all inventions, discoveries, developments and innovations conceived by the Contractor prior to the term of this Agreement and utilized by Contractor in rendering duties to the Company are hereby licensed to the Company for use in its operations and for an infinite duration. This license is non-exclusive, and may be assigned without the Contractor's prior written approval by the Company to a wholly-owned subsidiary of the Company.

6. **Confidentiality.** The Contractor acknowledges that during the engagement Contractor will have access to and become acquainted with various trade secrets and confidential information owned or licensed by the Company and/or used by the Company. The Contractor agrees to not disclose any of the aforesaid, directly or indirectly, or use it in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement. All records, documents and information, whether in electronic or hard copy, relating to the business



GLOBAL
PARTNERSHIP
SCHOOLS

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is entered into as of the 15th day of October 2011, between GEMS Americas, Inc. ("the Company") and Brian Beck ("the Contractor").

1. **Independent Contractor.** Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

2. **Duties, Term, and Compensation.** The Contractor's duties, term of engagement, fees and provisions for payment thereof are set forth in Schedule A, which may be amended in writing by mutual written agreement from time to time.

3. **Expenses and Equipment.** Contractor shall supply all necessary equipment and shall bear all out of pocket expenses in relation to the services provided. Expenses for the time spent by Contractor in traveling to and from Company facilities shall be reimbursable within 30 days of the receipt of appropriate forms and receipts.

4. **Written Reports.** The Company may request that project plans, progress reports and a final results report be provided by Contractor from time to time. A final results report shall be due at the conclusion of the project and shall be submitted to the Company in a confidential written report in such form as is reasonably requested by the Company.

5. **Inventions.** Any and all inventions, discoveries, developments and innovations conceived by the Contractor during this engagement relative to the duties under this Agreement shall be the exclusive property of the Company; and the Contractor hereby assigns all right, title, and interest in the same to the Company. Any and all inventions, discoveries, developments and innovations conceived by the Contractor prior to the term of this Agreement and utilized by Contractor in rendering duties to the Company are hereby licensed to the Company for use in its operations and for an infinite duration. This license is non-exclusive, and may be assigned without the Contractor's prior written approval by the Company to a wholly-owned subsidiary of the Company.

6. **Confidentiality.** The Contractor acknowledges that during the engagement Contractor will have access to and become acquainted with various trade secrets and confidential information owned or licensed by the Company and/or used by the Company. The Contractor agrees to not disclose any of the aforesaid, directly or indirectly, or use it in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement. All records, documents and information, whether in electronic or hard copy, relating to the business

of the Company, whether prepared by the Contractor or otherwise coming into Contractor's possession, shall remain the exclusive property of the Company. Upon the expiration or earlier termination of this Agreement, or whenever requested by the Company, the Contractor shall immediately deliver to the Company all such documents, records, and information and shall not keep any copies.

7. **Conflicts of Interest; Non-hire Provision.** The Contractor is expressly free to perform services for other parties while performing services for the Company. For a period of six months following any termination, the Contractor shall not, directly or indirectly hire, solicit, or encourage leaving the Company's employment, or within one year from termination, hiring any employee, consultant, or contractor of the Company with whom Contractor met or worked or learned about as a result of this engagement.

8. **Right to Injunction.** The Contractor expressly agrees that the Company shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the Contractor. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that the Company may have for damages or otherwise. The various rights and remedies of the Company under this Agreement or otherwise shall be construed to be cumulative, and no one of them shall be exclusive of any other or of any right or remedy allowed by law.

9. **Merger.** This Agreement shall not be terminated by the merger or consolidation of the Company into or with any other entity.

10. **Termination.** The Company may terminate this Agreement at any time by written notice to the Contractor.

11. **Independent Contractor.** This Agreement shall not render the Contractor an employee, partner, agent of, or joint venturer with the Company for any purpose. The Contractor is and will remain an independent contractor in Contractor's relationship to the Company. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind. Contractor agrees that Contractor will be solely responsible for all tax liability as a result of this Contracting agreement and Contractor's work for Company, and Contractor indemnifies Company therefor. Contractor agrees to provide all necessary insurances for Contractor's employees. Contractor further agrees to indemnify, defend and hold Company and its officers, employees and members harmless from and against all claims, damages, or liabilities as a result of Contractor's breach of this Paragraph.

12. **Insurance.** The Contractor will carry liability insurance (including malpractice insurance, if warranted) relative to any service that Contractor performs for the Company.

13. **Successors and Assigns.** All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, if any, successors, and assigns.

14. **Choice of Law.** The laws of the state of New York shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

15. **Headings.** Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

16. **Waiver.** Waiver by one party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

17. **Assignment.** The Contractor shall not assign any of his rights under this Agreement, or delegate the performance of any of his duties hereunder, without the prior written consent of the Company.

18. **Notices.** Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

*If to the Contractor:*
Brian Beck
2339 New Eureka Way
Gold River, CA 95670

*If to the Company:*
Manuel J. Rivera
GEMS Americas
565 Madison Avenue, 18th Floor
New York, NY 10022

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

19. **Modification or Amendment.** No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.



20. **Entire Understanding.** This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

21. **Unenforceability of Provisions.** If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

Global Partnership Schools, Inc.

By: ________________________ Date: 10/21/11
Manuel J. Rivera
Chief Executive Officer

By: ________________________ Date: ____________
Brian Beck
Contractor